# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BT COLLECTIVE, a California Non-Profit Mutual Benefit Corporation, on behalf of itself and on behalf of all others similarly situated,<br><br>                                          Plaintiff,<br><br>     vs.<br><br>IP HOLDINGS, LLC, a Washington Limited Liability Company, and DOES 1 to 100 Inclusive,<br><br>                                          Defendants. | CASE NO. 11cv0021-LAB (WVG)<br><br>**ORDER DENYING JOINT MOTION TO SEAL MOTION TO DISMISS** |

## I.     Introduction

BT Collective, which in 2009 grew and distributed marijuana for medical use, has moved to seal Sunlight Supply's motion to dismiss its product liability complaint, as well as supporting exhibits, because the documents include deposition testimony of BT Collective's principals that exposes violations of the federal Controlled Substances Act. Sunlight Supply initially joined BT Collective's motion to seal, but now opposes it. Earlier in the litigation, Magistrate Judge Gallo entered protective orders barring the disclosure of the deposition testimony. A subsidiary question is whether those protective orders were legitimate in the first place. Although Sunlight Supply agreed to the protective orders at the time, it supports the Court vacating them now. The parties have briefed both questions.

1    This Court is inclined to pass on the legitimacy of the protective orders at this point. No party has moved to modify them, and BT Collective's principals would likely not have provided potentially incriminating deposition testimony had the protective orders not been in place. But more to the point, the Court doesn't need to consider the legitimacy of the protective orders because *sealing* judicial records nevertheless demands an independent justification beyond the existence of a protective order that covers them. In other words, the mere fact that discovered material is subject to a protective order does not mean it must be sealed when filed with the Court. *See Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1180 (9th Cir. 2006); *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1134 (9th Cir. 2003). Indeed, district courts routinely decline to seal documents when the sole basis for the request is a protective order that covers them. *See, e.g.*, *Stone v. Advance America*, 2011 WL 662972 at *1 (S.D. Cal. Feb. 11, 2011); *Bain v. AstraZeneca*, 2011 WL 482767 at *1 (N.D. Cal. Feb. 7, 2011); *Hershey Co. v. Promotion in Motion, Inc.*, 2010 WL 1812593 at *3 (D.N.J. May 4, 2010). A case relied on by BT Collective to defend the protective orders makes this important point. *See Hobley v. Chicago Police Commander Burge*, 225 F.R.D. 221, 224 (N.D. Ill. 2004) (emphasizing distinction "between materials generated by pretrial discovery and materials that are in the public record because they form part of the judicial decision-making process").

It's worth noting, too, that the parties' first joint motion for a protective order requested that "any portions of the deposition transcript that are filed or otherwise submitted . . . be filed or otherwise submitted under seal," but Judge Gallo declined to include such a provision in the protective order that he subsequently entered. (*See* Dkt. Nos. 15, 17.) That, presumably, is why his first order was captioned "Order Granting In Part and *Denying In Part* Joint Motion for Protective Order." The parties' second joint motion for a protective order did not even request a sealing provision. (*See* Dkt. No. 25.) As a result, the protective orders merely provide that "only the parties to this action, their attorneys of record, their expert witnesses, and any other persons ordered by the Court shall be permitted access to and use

of the transcript of [the principal's] deposition." (Dkt. No. 17 at ¶ 3; Dkt. No. 25 at ¶ 5.)[1]

**II.     The Law**

Subject to a couple of exceptions that are inapplicable here, judicial records are presumptively open to public inspection. *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010); *Kamakana*, 447 F.3d at 1178; *Foltz*, 331 F.3d at 1134-35; *Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002). This presumption applies to pleadings filed with the Court, obviously, and it extends to discovery material attached to those pleadings. *Foltz*, 331 F.3d at 1134. The presumption doesn't detach, either, just because the material is subject to a protective order. *Id.* at 1136. *See also Kamakana*, 447 F.3d at 1179.

A request to seal judicial records offends the presumption in favor of access, and to overcome it a party "must show that 'compelling reasons supported by specific factual findings . . . outweigh the general history of access and the public policies favoring disclosure.'" *Pintos*, 605 F.3d at 678 (quoting *Kamakana*, 447 F.3d at 1178–79). Compelling reasons generally include the use of the records for an improper purpose, "such as . . . to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Kamakana*, 447 F.3d at 1179. Avoiding embarrassment or incrimination, however, is not a compelling reason to seal judicial records. *Id.* (citing *Foltz*, 331 F.3d at 1136).

A compelling reason is not required, however, to seal nondispositive motions. Those motions, the Ninth Circuit has held, are often unrelated to the underlying causes of action in a case and the public has a reduced interest in accessing them. *Pintos*, 605 F.3d at 678; *Kamakana*, 447 F.3d at 1179. "Therefore, when a party attaches a sealed discovery document to a nondispositive motion, the usual presumption of the public's right of access

---

[1] Perhaps Judge Gallo declined to include a sealing provision in the protective orders *not* because he found no basis for sealing, but simply because the sealing of judicial records is rarely approved prospectively. *See, e.g.*, *United States v. Armstrong*, 2009 WL 2605377 at *1 n.2 (N.D. Cal. Aug. 25, 2009). If so, it isn't fair to BT Collective to suggest that their sealing request has already been considered and denied. At the same time, it is relevant to the force of the principals' *reliance* on the protective orders that sealing was never a sure thing, and that when protected discovery material is actually filed with the Court "its status changes" and some additional showing must be made to justify sealing. *Foltz*, 331 F.3d at 1134.

is rebutted . . . ." *Phillips*, 307 F.3d at 1213.

Only "good cause" need be shown to seal a nondispositive motion. *Pintos*, 605 F.3d at 678; *Kamakana*, 447 F.3d at 1180. This is the same good cause standard that applies to the entry of protective order under Fed. R. Civ. P. 26(c): "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." The implication here is that if private discovery material is subject to a protective order, it can be sealed almost automatically when attached to a nondispositive motion. The district court doesn't need to conduct a fresh analysis because "it has already determined that 'good cause' exists to protect this information from being disclosed to the public by balancing the needs for discovery against the need for confidentiality." *Phillips*, 307 F.3d at 1213. Thus, the Ninth Circuit concluded in *Kamakana*, "a particularized showing under the good cause standard of Rule 26(c) will suffice to warrant preserving the secrecy of sealed discovery material attached to non-dispositive motions." *Kamakana*, 447 F.3d at 1180 (internal quotations and citations omitted).

### III. Discussion

The Court considers first whether BT Collective has offered a compelling reason to seal Sunlight Supply's motion to dismiss, assuming it is a dispositive motion. It considers second whether the motion to dismiss may be considered nondispositive, and if so, whether good cause support sealing it.

**A.     There is no compelling reason for sealing.**

Motions to dismiss are typically treated as dispositive. *See In re PPA Products Liability Litigation*, 460 F.3d 1217, 1231 (9th Cir. 2006). That means the presumption in favor of access applies and BT Collective must offer compelling reasons for sealing the pleadings. The only real reason it offers, however—the concealment of violations of federal law—is not compelling as a matter of law. *Kamakana*, 447 F.3d at 1179.[2]

---

[2] Relying on *Foltz*, BT Collective also argues that the "narrow scope" of Sunlight Supply's motion to dismiss, the traditional protection afforded to the deposition transcripts at issue, and the principals' reliance on the protective orders are compelling reasons for sealing. The Court disagrees.

First, *Foltz* did not hold that the narrow scope of a document is, by itself, a compelling reason to seal that document. It held that a document with a narrow scope contained

Related to this, the incidents giving rise to this case transpired in the latter half of 2009 when it was the policy of the Department of Justice to not pursue marijuana collectives operating in compliance with California law—and BT Collective has since dissolved. Even in light of a recent, apparent shift in policy suggesting that California law-abiding marijuana collectives are no longer safe from federal prosecution,[3] the Court suspects the prosecution of BT Collective's principals is a remote possibility. So, even assuming the threat of criminal prosecution supports sealing, which it does not, the Court would still find that BT Collective has failed to offer a compelling reason for sealing the motion to dismiss.

### B. Sunlight Supply's motion to dismiss is a dispositive motion.

BT Collective urges the Court to regard Sunlight Supply's motion to dismiss as nondispositive for the purpose of sealing because it does not go to the merits of BT Collective's product liability claims. This is not a frivolous argument. The basis of Sunlight

---

"privileged attorney-client communications and possibly work product that are traditionally protected from disclosure" and that "[n]either the public nor collateral litigants have any apparent right to or interest in such disclosure." *Foltz*, 331 F.3d at 1138. In other words, the compelling reason for sealing the document was its *content*, not its *scope*.

Second, deposition transcripts attached to a motion to dismiss, contrary to BT Collective's conclusory assertion, are not "traditionally protected from disclosure." A deponent may have a Fifth Amendment right not to answer questions put to him, but the invocation of that right is not protected from disclosure, nor are incriminating statements that he makes when he fails to invoke that right.

Third, while a party's reliance on a protective order may be a compelling reason to seal the discovery the protective order incentivized that party to produce, this is no firm rule. In *Foltz*, the court held that reliance on a protective order was not a compelling reason for sealing where the order was by its nature overinclusive and entered without "a particularized showing of good cause with respect to any individual document." *Id.* at 1138. In *Kamakana*, too, the court held that a protective order "geared primarily to discovery," and "recogni[zing] that confidential documents may find their way into a court file" could not induce reliance that specific documents would actually be shielded from public access when they became judicial records. *Kamakana*, 447 F.3d at 1183. It's clear in this case that BT Collective's principals relied on the protective orders in sitting for depositions. However, the first order explicitly denied a requested sealing provision, and it is criminal conduct, after all, that BT Collective wishes to conceal. BT Collective also admits that at least Mr. Eckel invoked his Fifth Amendment rights "repeatedly . . . and said little that could be considered incriminating." Finally, BT Collective can choose to abandon this case with the protective orders fully intact, in which event its principals suffer no prejudice for offering the deposition testimony at issue. In light of these considerations, the principals' reliance on the protective orders is not a compelling reason for the sealing requested.

[3] *See* Ryan Grim, *Medical Marijuana Memo: DOJ Cracks Down on Pot Shops*, THE HUFFINGTON POST, July 1, 2011, http://www.huffingtonpost.com/2011/07/01/medical-marijuana-memo-doj_n_888995.html (last visited November 23, 2011).

Supply's motion to dismiss is that BT Collective's principals' persistent invocation of the Fifth Amendment during their depositions prevents Sunlight Supply from obtaining sufficient discovery to defend against BT Collective's claims. The motion, therefore, is only tangentially related to the substantive merits of BT Collective's lawsuit, and the caselaw is subject to the interpretation that such a motion is nondispositive by definition.

For example, in *Kamakana* the Ninth Circuit explained the different presumptions of access to dispositive and nondispositive motions by observing that "the resolution of a dispute on the merits . . . is at the heart of the interest in ensuring the public's understanding of the judicial process and of significant public events." 447 F.3d at 1179 (internal quotations omitted). Likewise, in *Pintos*, the court noted that "[n]ondispositive motions are often unrelated, or only tangentially related, to the underlying cause of action, and, as a result, the public's interest in accessing dispositive materials does not apply with equal force to nondispositive materials." 605 F.3d at 678 (internal quotations omitted). Along these lines, this Court has previously held that a motion to dismiss for lack of personal jurisdiction is nondispositive for the purpose of sealing exhibits because "[i]f such a motion is granted, it is without prejudice to re-filing the action so as to cure the jurisdictional defect." *Young v. Actions Semiconductor*, 2007 WL 2177028 at *2 (S.D. Cal. July 27, 2007).

It is true that Sunlight Supply's motion to dismiss doesn't go to the underlying merits of this case. But the Court disagrees that this is some kind of bright-line test that renders it nondispositive for the purpose of determining a sealing standard. The public interest behind the presumption of access to judicial pleadings is its understanding of the judicial process. *Kamakana*, 447 F.3d at 1179; *Phillips*, 307 F.3d at 1213. *Kamakana* does suggest that it is the resolution of disputes on their merits that goes to the heart of this interest, but it doesn't go so far as to require that a typically dispositive motion tackle the merits of a case before it serves the public's understanding of the judicial process such that a presumption of access should attach. That would be an insensible rule to apply in a case like this. The factual issue in this case—whether irrigation tubing sold by Sunlight Supply leached chemicals that killed BT Collective's marijuana plants—is not a particularly interesting or essential one, and certainly not critical to the public's understanding of the judicial process. The issue raised

by Sunlight Supply's motion to dismiss, however, is of statewide if not national interest. The manner in which California's decriminalization of medical marijuana collides with federal criminal law, and the ability of medical marijuana dispensaries to seek legal relief in the federal courts, are matters of great public interest, and far more critical than an ordinary product liability lawsuit to the "public's understanding of the judicial process and of significant public events." *Kamakana*, 447 F.3d at 1172. Indeed, while an ordinary product liability case brought in federal court would attract no media attention, this case has—precisely because of the issues presented in the sealing request and in Sunlight Supply's motion to dismiss.[4] The labeling of Sunlight Supply's motion to dismiss as nondispositive is, therefore, an elevation of form over substance; it is a disservice to the very purpose to be served by distinguishing between nondispositive and dispositive motions in the first place.

The word "dispositive" is a term of art, and the Ninth Circuit has not endeavored to define it. But in common usage, a dispositive motion is one that has the potential to terminate an action for good. It is a motion that, if granted, "would result either in the determination of a particular claim on the merits or elimination of such a claim from the case." *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1215 (D.C. Cir. 1997). Sunlight Supply's motion to dismiss is, under this understanding, dispositive. If the Court grants it, BT Collective will not be able to pursue its product liability claim in this or any other federal court because of its principals' steadfast unwillingness to provide certain deposition testimony. That unwillingness is not analogous to a personal jurisdictional defect that any plaintiff would happily cure by re-filing an action; *Young* is therefore distinguishable, and the Court again sees no reason to regard Sunlight Supply's motion to dismiss as nondispositive for the purpose of sealing.[5]

---

[4] Greg Moran, *Marijuana Collective Case Won't Be Sealed*, SAN DIEGO UNION TRIBUNE, http://www.signonsandiego.com/news/2011/nov/21/marijuana-collective-case-wont-be-sealed/ (last visited November 22, 2011); Greg Moran, *Medical Pot Business Wants Court Fight Secret*, SAN DIEGO UNION TRIBUNE, Sept. 22, 2011, http://www.signonsandiego.com/news/2011/sep/22/medical-pot-business-wants-to-keep-court-battle/ (last visited November 20, 2011).

[5] The Court is likewise unpersuaded by *In re Nat'l Sec. Agency Telecomm. Records Litig.*, 2007 WL 549854 at *3–4 (N.D. Cal. Feb. 20, 2007), in which the court held that a preliminary injunction motion is not dispositive because it requires a "consideration" rather

### C. There is no good cause for sealing.

Even assuming Sunlight Supply's motion to dismiss is *non*dispositive, the Court does not find good cause to seal it. Above, the Court repeated the holding in *Kamakana* that "a particularized showing under the good cause standard of Rule 26(c) will suffice to warrant preserving the secrecy of sealed discovery material attached to non-dispositive motions." *Kamakana*, 447 F.3d at 1180 (internal quotations and citations omitted). BT Collective takes this to mean its work is done, and that it can simply point to the protective orders entered by Judge Gallo to show good cause for the requested sealing.

It is not so simple. The protective orders entered in this case were the product of a stipulation, and while Judge Gallo did find they were supported by good cause, he did not make "an individualized determination as to specific documents." *Kamakana*, 447 F.3d at 1183.[6] Court have declined sealing requests under these circumstances. *See Gonzalez v. Comcast Corp.*, 2011 WL 4089542 at *2 (E.D. Cal. Sept. 13, 2011). Indeed, the protective orders were entered *before* the BT Collective principals even sat for deposition—before it was certain what the scope of their testimony would be, and before it was certain how or to what extent they would incriminate themselves under the Controlled Substances Act. They are not the kind of protective orders, then, that can automatically supply the good cause required to seal the documents they cover.

---

than "resolution" of the merits. Sunlight Supply's motion to dismiss doesn't get to the question of whether tubing it sold to BT Collective was actually responsible for the death of its marijuana crop, but be that as it may, the court's working definition of a dispositive motion was one that either "resolves a case on the merits [or] serves as a substitute for trial." Sunlight Supply's motion to dismiss is a "substitute for trial" in this sense. The motion argues that the principals' unwillingness to testify openly and fully to certain facts prevents Sunlight Supply from defending this case *and* prevents BT Collective from proving its claims. To suggest, as BT Collective has, that Sunlight Supply's motion to dismiss merely presents a discovery dispute is to completely miss the consequences of the Court granting that motion.

[6] The Court does not mean to suggest that Judge Gallo entered the protective orders casually and without giving serious thought to them. The opposite is likely true. (*See* Dkt. No. 39 at 8.) At the same time, the protective orders, on their face, contain no specific findings. Perhaps this explains BT Collective's request that the Court allow Judge Gallo to amend his protective orders to lay out the specific bases for his finding of good cause. (*Id.*) The Court reiterates, though, that it is willing to leave the protective orders alone. The immediate question is whether there is a basis for overriding a strong presumption that judicial records are accessible by the public. Judge Gallo's finding of good cause for entry of the protective orders simply isn't transferrable to that question.

1       Under Rule 26(c), the burden is on BT Collective to show that "for each particular 2 document it seeks to protect . . . specific harm or prejudice will result if not protective order 3 is granted." *Foltz*, 331 F.3d at 1130. *See also Phillips*, 307 F.3d at 1211. The harm or 4 prejudice can't be speculative; they must be substantiated "by specific examples or 5 articulated reasoning." *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 6 1992). The Court has already articulated its skepticism about the risk BT Collective would 7 run by litigating this case publicly. It dissolved after its claims against Sunlight Supply arose, 8 and it was in operation during a time when the Department of Justice had little interest in 9 pursuing marijuana collectives in compliance with California law. The Court is also mindful 10 that, under Rule 26(c), a protective order may be granted to protect a party from 11 embarrassment and oppression. Applying that same standard to the requested sealing, it 12 is hard to see how requiring that Sunlight Supply's motion to dismiss be filed publicly could 13 be embarrassing. It is no secret that BT Collective is a marijuana collective and that its 14 principals (or at least one principal) invoked their Fifth Amendment rights in their respective 15 depositions. Enough information about BT Collective and this case, therefore, is already 16 public, and it is doubtful that Sunlight Supply's motion to dismiss would be an additional or 17 heightened embarrassment to BT Collective's principals. Likewise, it is not oppressive for 18 violators of federal law to be exposed to criminal prosecution for their violations.

19       BT Collective cites a number of cases that, it argues, defend the entry of protective 20 orders to bar disclosure of incriminating discovery. Because those cases don't speak to the 21 subsequent sealing of such discovery, they are not so helpful, and they are distinguishable 22 anyway. For example, in *Rivera v. Nibco, Inc.*, the Ninth Circuit approved a protective order 23 in an employment discrimination case that prohibited the defendant employer from using the 24 discovery process to inquire into the plaintiff employees' immigration status. 364 F.3d 1057 25 (9th Cir. 2004). But there, the court reasoned that the incriminating information sought in 26 discovery was not relevant to the plaintiffs' claims *and* that it was being sought for a nefarious

27
28

purpose, namely to chill civil rights actions. *Id.* at 1064. Neither concern is present here.[7] The information sought by Sunlight Supply, far from being irrelevant, is so *relevant* that the basis of Sunlight Supply's motion to dismiss is that it cannot defend this case without it. BT Collective has also conceded that Sunlight Supply is not trying to bully it out of this lawsuit by threatening criminal exposure. Indeed, Sunlight Supply was initially amenable to the protective orders entered by Judge Gallo as well as the sealing now being sought. Finally, there is a clear distinction in the Court's judgment between, on the one hand, the public's interest in a discrimination-free workplace and the robust, private enforcement of Title VII, and, on the other hand, the public's interest in a criminal enterprise seeking legal redress in court for a faulty product that impeded the enterprise.

The Court would also distinguish *Hobley* and *Andover Data Servs.*, 876 F.2d 1080 (2d Cir. 1989). The question in *Hobley* was whether to enter a protective order barring the plaintiff's counsel from publicly disseminating or commenting on the depositions of *non-parties* in which they asserted their Fifth Amendment rights. That kind of protective order binding the parties is in place in this case, and the Court is willing to let it be. It is another question entirely whether to use invoke the same good cause supporting that protective to justify the sealing of a judicial record. The court in *Hobley* was quick to observe "[a]s a threshold matter" that the protective order sought "does *not* relate to materials filed as part of the public record in this case." *Hobley*, 225 F.R.D. at 224. *Andover* is even easier to distinguish. The question in that case, which the Second Circuit answered in the negative, was whether a court could essentially override a non-party deponent's invocation of his Fifth Amendment rights by subjecting his deposition testimony to a protective order.[8] That is

---

[7] There was also a proposal by the plaintiffs in *Rivera* that the trial be bifurcated into a liability and damages phase, and that if they established liability, the court conduct an *in camera* review in which each plaintiff would have to testify to his or her immigration status. BT Collective's case is entirely different. Fully aware *now*, along with the Court, that it has violated the Controlled Substances Act, it asks the Court to help it conceal these violations solely so it can bring a product liability claim in federal court.

[8] The Second Circuit in *Andover* did reference a line of cases "wherein we have upheld the use of protective orders limiting disclosure of potentially incriminating testimony where parties have *voluntarily* consented to testify in civil cases in reliance upon such protective orders." *Andover*, 876 F.2d at 1084. Those cases are descendants of *Martindell v. ITT Corp.*, 594 F.2d 291 (2d Cir. 1979), in which the Second Circuit denied the

wholly inapplicable to this case.

## IV. Conclusion

The joint motion to seal Sunlight Supply's motion to dismiss is **DENIED**. This Court believes the motion is a dispositive one and finds that the reasons BT Collective has offered for sealing are not compelling. Alternatively, if the motion is properly treated as *non*dispositive, the Court would still not find good cause to seal it. The Court simply cannot look past what it is being asked to do here, which is not only *overlook* BT Collective's likely violations of federal law but actually *aid* BT Collective in *concealing* them. The answer is no. BT Collective cites a lot of legal authority, to be sure, but it cites none for the proposition that, as a plaintiff in a civil case whose claims arise out of criminal conduct under federal law, it can invoke a stipulated protective order between itself and the defendant, approved by the Court, to litigate this case entirely behind the curtain.

The Court therefore reinstates its original ultimatum. (*See* Dkt. No. 32.) BT Collective can litigate this case transparently and hope that the United States takes no interest in investigating its apparent violations of the Controlled Substances Act. If it doesn't want to do that, it can voluntarily dismiss the action. All discovery in this case, and this Order itself, will be stayed pending BT Collective's representation that it will pursue an interlocutory appeal.

**IT IS SO ORDERED**.

DATED: November 23, 2011

*[signature: Larry A. Burns]*

---

Government access to deposition transcripts for the purposes of a criminal investigation. The depositions were taken pursuant to a court-approved stipulation that the parties would treat them as confidential and use them only to prosecute or defend the action, and the court held that "a witness should be entitled to rely upon the enforceability of a protective order against any third parties." The Court doesn't disagree with that, which is why it is willing to leave the protective orders in place insofar as they bind Sunlight Supply not to disclose the deposition transcripts. There is no doubt that BT Collective's principals relied on the protective orders and wouldn't have consented to depositions without them. The *Martindell* line of cases says nothing, though, about the fate of material that is subject to a protective order when it is actually filed with a court as, or as part of, a judicial record. BT Collective's reliance on Sunlight Supply not disclosing the deposition transcripts goes only that far; it is no justification—not even good cause—for the Court sealing those depositions wherever in the record they appear.